NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DENNIS OLSON,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11872
Trial Court No. 3PA-13-3129 CR

O P I N I O N

No. 2539 — February 17, 2017

Appeal from the District Court, Third Judicial District, Palmer, David L. Zwink, Judge.

Appearances: Lars Johnson, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Lindsey Burton, Assistant District Attorney, Palmer, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER, writing for the Court.
Judge SUDDOCK, dissenting.

_____

[*]  Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

In November 2013, Stephanie Olson obtained a 20-day domestic violence protective order against her husband, Dennis Olson. Under the terms of this restraining order, Olson was prohibited from being within a quarter-mile of Stephanie's residence.

At that time, Stephanie was living in the marital home and Olson was living in a trailer on the same property (within a quarter-mile of the house). When the State Troopers served Olson with the restraining order, they informed him that he was required to leave the property — that he would either have to move the trailer or find another place to live.

Olson left the property without taking anything he needed for the cold weather. Several hours later, he returned to the trailer and went to sleep. He was still there when the troopers returned to the property the next day around noon.

Based on this episode, Olson was charged with violating the protective order, AS 11.56.740(a). At trial, Olson defended by asserting the defense of necessity: he argued that he needed to return to the trailer to avoid hypothermia or other injury arising from his exposure to the elements.

The jury rejected Olson's necessity defense and convicted him of violating the protective order.

Olson now appeals, arguing that the fairness of his trial was prejudiced by one of the trial judge's evidentiary rulings. At Olson's trial, over the defense attorney's objection, the trial judge decided to let the prosecutor introduce a copy of the restraining order. One section of this order — Section D — showed that the judge who issued the order did so on the basis that there was probable cause to believe that Olson had committed several serious crimes.

We agree with Olson that the trial judge should have redacted the restraining order to delete these unproved allegations of criminal conduct. But for the

reasons explained in this opinion, we conclude that this error was harmless under the facts of Olson's case.

*The trial judge's decision to let the State introduce evidence that the judge who issued the restraining order found probable cause to believe that Olson had committed other serious crimes*

Olson's attorney anticipated that the prosecutor would offer the restraining order into evidence, so (before the beginning of the State's case) the defense attorney asked the trial judge to give the jury a redacted version of the restraining order — a version that did not include the "Findings" listed on page 2 of the order.

The Alaska Court System has designed a form order for judges to use when they hear an application for a domestic violence restraining order. Section D of this form order is labeled "Findings". Section D offers the judge a series of check-boxes to use when describing the basis for issuing the restraining order.

In Olson's case, the second half of Section D looked like this:

2. The court finds probable cause to believe that the respondent committed, or attempted to commit, the following crime(s) involving domestic violence against the petitioner:

☒ assault or reckless endangerment    ☐ harassment (telephonic or electronic)
☒ stalking    ☐ terroristic threatening
☐ violating a protective order    ☒ criminal mischief
☒ sexual offense    ☐ arson or criminally negligent burning
☐ kidnapping or custodial interference    ☒ criminal trespass
   ☐ burglary
☐ robbery, extortion, or coercion

☐ other AS 11.41 crime _____

In other words, the judge who issued the restraining order found probable cause to believe that Olson had committed, or had attempted to commit, assault or reckless endangerment, stalking, and some unspecified "sexual offense", as well as criminal mischief and criminal trespass.

The judge's findings were based on Stephanie's *ex parte* presentation to the court (so Olson had no chance to respond to these allegations at the time), and Olson was never charged with any of these purported crimes. These allegations were relevant to Olson's case solely because the judge's findings of probable cause provided the basis for the judge's authority to issue the restraining order.

Olson's attorney told the trial judge that he did not intend to challenge the validity of the restraining order — that, in fact, he was willing to stipulate that the order was valid. Thus, the defense attorney argued, the jury should not be informed of the allegations of criminal conduct listed in Section D — because these allegations had no relevance to any material issue at Olson's trial, and because they presented a substantial risk of unfair prejudice.

The prosecutor agreed that the allegations listed in Section D had no particular relevance to whether Olson had violated the restraining order, and the prosecutor told the trial judge that she did not plan to comment on those allegations. But the prosecutor argued that the jury needed to see the entire text of the restraining order (including the allegations contained in Section D) because, if the jurors received an abridged version of the order, they might think that the State was trying to hide something.

The prosecutor told the court, "It needs to be clear [to the jurors] that these [orders] aren't just issued for no reason — that there does have to be a [judicial] finding." The prosecutor also declared that she "[did not] see how [the allegations were] more prejudicial than probative", so long as the court gave a limiting instruction to the jurors.

After considering the parties' arguments, the trial judge decided to adopt the prosecutor's approach:

> *The Court*: I'm going to allow the [restraining order] in as it is. I'm going to give ... what I hope is a very strong curative instruction, including describing the process [of] how these [orders] come about, [and] that there are no assumptions to be made [about the allegations included in the order]. And also that there has been no criminal charge brought against Mr. Olson based on any of the [allegations] that are listed as findings [in] this [order].

*The trial judge committed error by allowing the State to introduce the allegations of criminal conduct contained in Section D of the restraining order*

As we explained in the preceding section of this opinion, the unproved allegations of criminal conduct contained in Section D of the restraining order were relevant to Olson's case solely because the judge's findings of probable cause provided the basis for the judge's authority to issue the restraining order.

But the validity of the restraining order was not disputed. Indeed, Olson's attorney told the trial judge that he would stipulate that the order was valid. Given the defense attorney's offer to stipulate that the restraining order was valid, it is unclear why the State was allowed to introduce *any* portion of the restraining order. This document had no apparent relevance, apart from establishing that Olson was subject to a valid restraining order — the very thing that the defense attorney was willing to stipulate to. In light of this offered stipulation, the trial judge could have simply instructed the jurors that the parties agreed that the restraining order was valid.

But in any event, the State should not have been allowed to introduce the portion of the restraining order which recited that a judicial officer had found probable cause to believe that Olson had committed several different crimes.

In its brief to this Court, the State argues that these allegations of criminal conduct were relevant because they tended to disprove the necessity defense that Olson offered at trial. But allegations are not the same as proof. The fact that the judge who issued the restraining order found probable cause to believe that Olson had committed various crimes did not make the restraining order admissible to prove that Olson actually committed those crimes.

See *F.T. v. State*, 862 P.2d 857, 863-64 (Alaska 1993), where our supreme court held that a trial court "erred in taking judicial notice of [domestic violence] restraining orders [issued against a child's father] for the purpose of establishing that [the father] had committed acts of violence in the past."

The allegations of criminal conduct recited in the restraining order had no relevance to any material issue at Olson's trial. And because these allegations presented a substantial risk of unfair prejudice, the jury should not have been informed of them.

As we indicated earlier, it is doubtful that the restraining order (as a whole) retained any relevance once Olson's attorney stated that he was willing to stipulate that the restraining order was valid. But even assuming that the restraining order had some slight relevance, the trial judge abused his discretion under Alaska Evidence Rule 403 when he refused to redact the allegations of criminal conduct from the version of the restraining order that the jury received.

*Why we conclude that the error was harmless under the facts of Olson's case*

Although the trial judge should not have let the State introduce the portion of the restraining order which listed the various allegations of criminal conduct against Olson, we conclude that the judge's error was rendered harmless by the cautionary instructions that the jury received regarding these allegations.

During the defense attorney's summation to the jury, the trial judge instructed the jurors that there was no proof that these allegations were true, and that it was irrelevant to the jury's decision whether the allegations were true:

> *The Court*: [R]egarding whether there's any [basis] for the allegations: That is not an issue here ... . That's not anything to be considered by anybody here. That's something for the court in deciding whether to ... [grant] orders. [That decision] ... is done totally, as [the defense attorney] has said, on an *ex parte* basis, because that is the system. ... It's not relevant to this case at all to decide whether or not any of the allegations were accurate or not. It's [only relevant] that ... an order ... was issued.

These principles were reiterated later, when the trial judge formally instructed the jury.

Jury Instruction No. 6 specifically addressed the allegations of criminal conduct that were contained in the text of the restraining order. Instruction No. 6 told the jurors that these allegations were unproved, that they were irrelevant to the charge against Olson, and that the jurors were not to consider these allegations for any purpose:

> The State has submitted as an exhibit the 20-Day Ex Parte Domestic Violence Protective Order granted in 3PA-13-742 CI. This is civil order, not a criminal conviction.

A 20-Day Ex Parte Domestic Violence Protective Order granted by the court is based solely on the written allegations filed ... in a Petition by a Petitioner. These are not subject to any cross-examination. A Respondent is not given any opportunity to challenge the allegations or have any input to the court prior to the entry of such an order.

Any findings made by the court as listed on the order are not to be considered by the jury for any purpose in this case. The parties agree that the Protective Order was an enforceable court order. Any of the allegations that may have been listed in the petition are irrelevant to the charge which has been brought against Defendant in this matter now at trial. There have been no criminal charges brought to this date against Defendant based on the allegations in the petition on which the order was based.

In his dissent, Judge Suddock suggests that the jurors in Olson's case might have improperly considered the findings listed in the restraining order, even though the instruction we have just quoted told the jurors that those findings "[were] not to be considered by the jury for any purpose in [Olson's] case".

Judge Suddock is concerned that the findings listed in the restraining order might have influenced the jurors when they deliberated the question of whether the harm that Olson avoided by violating the restraining order (*i.e.*, the risk of hypothermia) outweighed the harm that he caused by violating the restraining order. More specifically, Judge Suddock is concerned that, based on the allegations in the restraining order, the jurors might have thought that Olson's violation of the restraining order posed a threat that he would commit crimes of domestic violence against his wife.

Judge Suddock's concern is a legitimate one, but based on the record of Olson's trial, we conclude that it is highly unlikely that the jurors violated the jury instruction in Olson's case.

We note, in particular, that after the defense attorney argued to the jury that Olson violated the restraining order out of necessity, the prosecutor (in her rebuttal summation) made no mention of whether the harm that Olson caused was outweighed by the harm he avoided. Instead, the prosecutor focused solely on the *reasonableness* of Olson's decision to return home in violation of the restraining order.

The prosecutor listed all of the other options that Olson might have pursued if he was concerned about hypothermia, and then she asserted that Olson rejected those options because "he decided to throw a tantrum". She continued, "[He] got angry that he was being kicked out of his house, and he decided to be stubborn and not accept help from anyone."

The prosecutor ended her summation by affirmatively telling the jurors that Olson was "not a bad guy". But the prosecutor argued that Olson made a series of unreasonable decisions, ending in his choice to return home in violation of the restraining order:

> *Prosecutor*: [Olson's] belief that he had no other options had to have been reasonable, and I submit to you [that] it was not reasonable. I submit to you that, as he was walking those eight hours, he could have been coming up with a plan for himself. And he didn't. He walked away [from his home] without grabbing a coat, without grabbing long underwear, without grabbing a backpack, without grabbing anything that he would have needed. And he was given that opportunity, and he admitted that. But he just walked away, without planning, without thinking.

So I submit to you it wasn't reasonable. The decisions he made here were not reasonable. [He's] not a bad guy. Just bad decisions. And that's what it is in this case: not a bad guy, just bad decisions. And for that reason, the State would ask you to find the defendant guilty. Thank you.

All three members of this Court agree that it was error for the trial judge to allow the prosecutor to introduce an unredacted version of the restraining order — because this allowed the jurors to learn about the allegations of criminal conduct that led to the issuance of the restraining order, when those allegations had no relevance.

But given the fact that Olson's jury was repeatedly told that these allegations were both unproved and irrelevant, given the fact that Instruction No. 6 expressly directed the jurors not to consider these allegations for any purpose, and given the tenor of the prosecutor's final argument to the jury, we conclude that the judge's error was harmless — *i.e.*, that it did not appreciably affect the jury's decision. [1]

We therefore AFFIRM the judgement of the district court.

---

[1] *See Love v. State*, 457 P.2d 622, 634 (Alaska 1969) (holding that, for instances of non-constitutional error, the test for harmlessness is whether the appellate court "can fairly say that the error did not appreciably affect the jury's verdict").

Judge SUDDOCK, dissenting.

I agree with the majority's conclusion that the trial judge erred by admitting into evidence a domestic violence protective order which recited that there was probable cause to believe that Olson had committed serious crimes. But I disagree that the trial court's limiting instructions rendered the error harmless.

I reach this conclusion because Olson bore the burden of proving, as an element of his necessity defense, that the harm he allegedly avoided when he violated the court's order was graver than the harm he inflicted by violating it.[1] Olson described the avoided harm at trial: he testified that after troopers served him with the protective order at approximately 6 p.m. at his trailer in Big Lake, he walked for about eight and a half hours to downtown Wasilla in ten-degree weather, and feared that he was becoming hypothermic. Concerned for his safety, he telephoned his daughter and had her drive him back to the trailer on Ms. Olson's property. He then went to bed and was arrested later that morning.

At trial's end, the jury was instructed to resolve Olson's necessity defense in part by balancing the alleged harm that Olson avoided (hypothermia) against the harm caused by his violation of the domestic violence protective order. If the jury accepted Olson's testimony that he only returned to the trailer out of the necessity to avoid hypothermia, the jury could have concluded that the harm flowing from his violation of the order was negligible in comparison to Olson's risk of hypothermia. The jury could have then found in Olson's favor by virtue of his necessity defense.

But once the judge allowed the introduction of evidence suggesting that Olson had already committed serious crimes of domestic violence — assault, stalking,

---

[1] *See, e.g.*, *Greenwood v. State*, 237 P.3d 1018, 1022 (Alaska 2010).

– 11 –

a sexual offense, criminal mischief, and criminal trespass — the litany of crimes raised the specter of Olson as a violent and obsessive person capable of sexual predation.

It is implausible that the jury could set those allegations aside and conclude that the risk posed to Ms. Olson by Olson's presence in the trailer was negligible. Thus, the prior-crime evidence likely prejudiced Olson's necessity defense.

Perhaps perfectly drafted curative instructions could have ameliorated this taint. But I conclude that the two curative instructions that were actually given were ambiguous because they failed to focus upon the core prejudice created by the evidence: the fact that the allegations of prior domestic violence crimes could have caused the jurors to improperly evaluate the amount of harm posed by Olson's violation of the protective order.

The judge gave his first curative instruction during the defense attorney's summation. The prosecutor objected when the defense attorney commented that Ms. Olson's allegations were "baseless." (The judge had precluded litigation over the truth of the prior-crime evidence.) The judge sustained the prosecutor's objection and orally instructed the jurors that they need not concern themselves with whether Ms. Olson's allegations had a basis in fact, because another judge had already made that determination prior to issuing the protective order:

> [R]egarding whether there's any [basis] for the allegations:
> That is not an issue here. … *That's something for the court*
> *in deciding whether to … grant orders.* It's not relevant to
> this case at all to decide whether or not any of the allegations
> were accurate or not. It's [only relevant] that ... an order ...
> was issued. (Emphasis added.)

The jury's likely takeaway from this brief and confusing oral instruction was the exact opposite of what the judge intended: that another judge had reviewed the prior-crime allegations and had found that there was a factual basis for these allegations, and that the

jurors need not decide whether there was any basis for these allegations because that had already been decided by the other judge when he granted the order.

The second curative instruction, given at trial's end, was scarcely clearer. The judge instructed the jury that Olson "[was] not given any opportunity to challenge the allegations or have any input to the court prior to the entry of such an order." But this simply informed the jury that a judge evaluated Ms. Olson's allegations — and acted upon them — without Olson's input, not that the allegations were necessarily unreliable.

The curative instruction further directed the jury to disregard "any findings made by the court." This obviously referred to the probable cause findings in the protective order. Effectively, the instruction told the jury to disregard the fact that a judge had found probable cause to believe that Ms. Olson's prior-crime allegations were true, but not the fact that she had gone to the domestic violence court and lodged those accusations in the first instance. But because Ms. Olson testified at trial, the jury could well have found her to be a credible witness, one unlikely to lodge baseless allegations.

Finally, this curative instruction told the jury that the allegations were irrelevant to the *charge* against the defendant. But a different instruction informed the jury that, quite apart from the *charge*, the defendant had raised the affirmative *defense* of necessity — and that as to that defense, Olson bore the burden of proof. The court never instructed the jury that, during its evaluation of Olson's necessity defense, and more particularly in its evaluation of the harm reasonably to be foreseen from Olson's return to the trailer, the jury could not consider Ms. Olson's sworn statement to the domestic violence court. And Ms. Olson's allegations clearly suggested that Olson was an obsessed domestic batterer and sexual offender.

For these reasons, I am unable to share the majority's optimism that the judge's curative instructions, couched as they were in legalese, accomplished the task of

unringing an extraordinarily resounding bell and actually cured the error. Accordingly, I respectfully dissent.